# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | NO. EDCV 11-2022 AGR<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Alicia Rodriguez filed this action on January 4, 2012. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on January 13 and 18, 2012. (Dkt. Nos. 7, 9.) On September 4, 2012, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

**I.**

**PROCEDURAL BACKGROUND**

On October 14, 2009, Rodriguez filed an application for supplemental security income. Administrative Record ("AR") 21, 125-27. Rodriguez alleged a disability onset date of April 1, 2007. AR 21, 125. The application was denied initially and on reconsideration. AR 21, 55-56. Rodriguez requested a hearing before an Administrative Law Judge ("ALJ"). AR 75. On April 7, 2011, the ALJ conducted a hearing at which Rodriguez and a vocational expert testified. AR 39-54. The ALJ granted Rodriguez's request to hold the record open for 30 days to obtain updated treatment records and records from Colton Valley Medical Care, Inc. ("Colton Valley"). AR 46, 54. After the 30-day period expired, Rodriguez submitted additional records on June 8, 2011. AR 242-425. On June 24, 2011, the ALJ issued a decision denying benefits. AR 15-29. On November 30, 2011, the Appeals Council denied Rodriguez's request for review. AR 1-5. This action followed.

**II.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the

evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.
## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

### B. The ALJ's Findings

The ALJ found Rodriguez has the medically determinable impairments of depression and lumbosacral strain/sprain. AR 23. She does not have an impairment or combination of impairments that has significantly limited her ability to perform basic work-related activities for 12 consecutive months. *Id.* The ALJ concluded that Rodriguez has not been under a disability within the meaning of the Social Security Act since October 14, 2009, the date she filed her application. AR 21, 29.

### C. Treating Physician

Rodriguez contends the ALJ did not properly consider the opinion of her treating physician at Colton Valley. Because the physician's name is unknown, this opinion refers to the physician simply as the treating physician.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v.*

*Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When, as here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Orn,* 495 F.3d at 632 (citations and quotation marks omitted).  "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict."  *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

The treating physician provided a form entitled, "Medical Opinion Re: Ability To Do Work-Related Activities (Physical)," dated October 19, 2010.  AR 239-41.  The treating physician opined that Rodriguez can lift and carry less than 10 pounds frequently and occasionally.  AR 239.  She can stand and walk less than 2 hours in an 8-hour day, and sit about 4 hours in an 8-hour day.  *Id.*  She must walk around every 30 minutes for 30 minutes.  AR 240.  She requires a sit/stand option.  *Id.*  She would need to lie down every 3 hours.  *Id.*  She can occasionally twist, stoop, crouch, and climb stairs.  *Id.*  She can never climb ladders.  *Id.*  She must avoid all exposure to extreme cold, wetness, and hazards because the cold causes severe back and right knee pain.  AR 241.  She needs to elevate her right leg 3 times a day.  *Id.*  She would be absent from work more than 3 times a month due to her impairments or treatment.  *Id.*

The ALJ considered the treating physician's opinion.  AR 27.  He gave "little weight" to the opinion because it was:  (1) an unsupported checklist-style form that was brief, conclusory and inadequately supported by clinical findings; (2) an accommodation to Rodriguez; and (3) the medical records contain no treatment notes or diagnostic examinations of any physical impairment.  *Id.*

The ALJ articulated specific and legitimate reasons supported by substantial evidence in the record for discounting the treating physician's opinion.

4

An ALJ may discount a check-the-box report that does not explain the basis of its conclusions. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly rejected treating physician's conclusory check-list report); *see also Thomas*, 278 F.3d at 957 (an ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings"). The treating physician's opinion was provided on a check-list questionnaire. AR 239-41. In response to the question asking for medical findings to support these limitations, the treating physician wrote: "N/A." AR 240. The record contains no treatment records from Colton Valley, even though the ALJ held the record open and gave Rodriguez an additional 30 days to obtain the treatment records. AR 46, 54. The ALJ could reasonably determine that the treating physician did not adequately explain the basis of his or her opinions in the form and that there were no treating records that contained notes or diagnostic examinations of any kind.

The ALJ further discounted the treating physician's opinion because it was an accommodation to Rodriguez. AR 27. Rodriguez argues "the ALJ does not provide any evidence to support the conclusion that the [Treating Physician]'s opinion is 'completed as an accommodation to the claimant.'" JS 6. However, an ALJ is entitled to reject the treating physician's opinion if the doctor becomes an advocate for a claimant. *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). The ALJ may draw reasonable inferences logically flowing from the record. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The ALJ noted that the opinion included conclusions regarding functional limitations without any rationale or support for such conclusions. AR 27. He noted the lack of treatment notes or diagnostic examinations of Rodriguez' physical impairment by the treating physician. AR 27. The ALJ could reasonably infer from the record that the treating physician's opinion was an accommodation to Rodriguez.

Rodriguez argues that the treating physician's October 19, 2010 opinion

5

was based on objective evidence because medical records indicate that, after a fall at a Kmart, Rodriguez underwent right knee surgery in 1999 and a MRI in 1999 showed a central and left herniated disc at L4-L5 and L5-S1 with lumbar radiculopathy and desiccation.[1]  AR 329, 241, 401.

As the ALJ noted, the most recent treatment notes from the Arrowhead Regional Medical Center Emergency Room indicated Rodriguez's complaints of vaginal pain on September 16, 2010, and ear pain/cough on November 6, 2010. AR 25, 228, 231.  On both visits, physical examinations and psychological examinations were performed.  AR 229, 232.  No problems with her back, knees or depression were noted.  AR 25-26, 228-29, 231-32.

The ALJ did not expressly discuss the 1999-2001 medical records, which were provided after the hearing period was closed but before his decision.  Any error is harmless.  These records concern a period roughly seven years prior to the alleged onset of disability and are of limited relevance.  *Carmickle v. Commissioner, SSA*, 533 F.3d 1155, 1165 (9th Cir. 2007).  Post-surgical treatment notes from 1999 show that Rodriguez felt "fine," "stronger," and "good." AR 379-80, 388-90.  In a June 15, 2000 orthopedic evaluation, Dr. Simon found that Rodriguez's right knee incision was well-healed, she could straight leg raise, and her range of motion was zero to 140 degrees.  AR 408.  He noted "obvious quadriceps atrophy" on the right side.  *Id.*  Rodriguez could toe walk and heel walk and had "good range of motion of her LS spine with flexion hands to mid tibias and no pain on back extension."  AR 394.  Her deep tendon reflexes, patella and achilles were +2/4 and equal bilaterally.  *Id.*  Her EHL, quadriceps and hamstring strength was 5/5 and equal bilaterally.  *Id.*  She had negative straight leg raise in the seated and the supine position.  *Id.*  X-rays of the right knee showed no obvious degenerative changes.  *Id.*  Rodriguez denied radiation down

---

[1] The MRI was from 1999, not 2001, as Rodriguez contends.  AR 344, 401.

the bilateral lower extremity, and denied any current back pain. AR 394, 408. She reported occasional back pain that limited her in heavy lifting and moving. AR 408. She had slight pain in her right knee when she ambulated for long periods of time. *Id.* Dr. Simon assessed 3% impairment for her herniated disk and 7% impairment to the lower extremity. AR 394.

On January 23, 2001, Dr. Hall provided a neurosurgical consultation. AR 399-402. He found Rodriguez to be "healthy appearing" and "in no distress." AR 400. She had a normal gait. *Id.* In the neurological examination, Rodriguez had a normal motor examination, upper strength testing 5/5 and lower strength testing generally 5-/5-, decreased sensation to light touch on the right in the L4 to S1 distributions, and 2/2 deep tendon reflexes. AR 400-01. He noted the MRI of the lumbar spine done in 1999 and his impression was lumbar radiculopathy with disk herniation at L4-L5 and L5-S1. AR 401. He recommended Advil and continuation of her home exercise program. He also recommended lumbar diskectomy at L4-L5 and L5-S1 from the left or intradiskal electrotherapy at both levels. *Id.* If she chose not to have surgical intervention, her impairment would be estimated at 10% impairment of the person as a whole. *Id.*

The record contains little or no evidence of doctor visits, evaluations or treatment between Dr. Hall's consultation in 2001 and Dr. Sophon's consultation in 2009.[2] On November 19, 2009, Dr. Sophon, an orthopedic consultative examiner, examined Rodriguez. AR 26, 193-98. Rodriguez's gait was normal. AR 195. She exhibited no evidence of tenderness or muscle spasm in the lumbar spine, flexion was 80/90 degrees, extension was 20/30 degrees, and lateral bending was 20/25 degrees bilaterally. AR 26, 195. She exhibited negative

---

[2] In the Disability Report – Adult, Rodriguez stated she was not taking any medications for her conditions. AR 138. In the Disability Report – Appeal, she stated she took Celebrex and Roxicet for pain in her right knee. She listed no medication for back pain. AR 178. At the hearing, she testified that she takes a "pill daily" for back pain, but she could not remember the name of it. AR 45.

straight leg raising.  AR 26, 195.  Her right knee range of motion was 0 to 130 degrees, and her left knee range of motion was 0 to 135 degrees.  AR 196.  Her neurologic motor strength was grossly within normal limits.  AR 26, 197.  Dr. Sophon diagnosed lumbosacral strain and treated right patellar fracture.  AR 26, 197.  He opined that Rodriguez could lift and/or carry 50 pounds frequently and could stand and/or walk for 6 hours in an 8 hour day.  AR 26, 197.

The ALJ articulated specific and legitimate reasons for discounting the treating physician's opinion.  *Orn*, 495 F.3d at 631-32; *Batson*, 359 F.3d at 1195 (ALJ did not err in rejecting treating physician's opinion unsupported by objective medical findings).  Rodriguez argues the ALJ should have recontacted the treating physician to obtain clarification and/or additional evidence.  However, rejection of a treating physician's opinion does not by itself trigger a duty to contact the physician for further explanation.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).  The ALJ made no finding that the evidence was ambiguous or that the record was inadequate to allow for proper evaluation.  *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").  In addition, as the Commissioner notes, the ALJ ordered two consultative examinations and kept the record open for 30 days to allow Rodriguez to submit additional evidence.  AR 26, 46-47, 53-54, 193-98, 201-08; *see Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (ALJ satisfies duty to develop record by keeping the record open to allow supplementation); *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001) ("One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination.").  Under these circumstances, the ALJ did not have a duty to recontact the treating physician. The ALJ did not err.

8

### D. Severe Impairment

Rodriguez contends the ALJ erred in finding her impairments not severe.

At step two of the sequential analysis, the claimant bears the burden of demonstrating a severe, medically determinable impairment that meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). To satisfy the duration requirement, the severe impairment must have lasted or be expected to last for a continuous period of not less than 12 months. *Id.* at 140.

> Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.

20 C.F.R. § 404.1508; 20 C.F.R. § 416.908. "[T]he impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'"[3] *Yuckert*, 482 U.S. at 154 n.11 (quoting 20 C.F.R. § 404.1520(c)); *Smolen*, 80 F.3d at 1290 ("[A]n impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities.") (citation and quotation marks omitted).

"An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d

---

[3] The ability to do basic work activities includes "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," "capacities for seeing, hearing, and speaking," "understanding, carrying out, and remembering simple instructions," "use of judgment," "responding appropriately to supervision, co-workers, and usual work situations," and "dealing with changes in a routine work setting." *Yuckert*, 482 U.S. at 168 n.6 (citation and quotation marks omitted); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

9

683, 686-87 (9th Cir. 2005) (emphasis in original, citation omitted). Step two is "a *de minimis* screening device [used] to dispose of groundless claims" and the ALJ's finding must be "'clearly established by medical evidence.'" *Id.* at 687 (citations and quotation marks omitted).

The ALJ found that since October 14, 2009, the date Rodriguez filed her application for supplemental security income, Rodriguez "does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, [she] does not have a severe impairment or combination of impairments." AR 23.

Rodriguez argues that she has severe impairments and relies on the treating physician's October 19, 2010 opinion, her partial patellectomy and repair of the right knee in 1999, and her 1999 MRI. As discussed above, the ALJ articulated specific and legitimate reasons for discounting the treating physician's opinion. The remaining records Rodriguez cited show that she had right knee surgery and left sided disc herniations in 1999, but provide no evidence that her impairments caused a significant limitation on her ability to perform basic work-related activities for 12 consecutive months after her filing date.

Substantial evidence supports the ALJ's determination that Rodriguez's impairments are not severe. As discussed above, objective evidence indicated, at best, that Rodriguez had good range of motion, good strength, and only occasional back pain that limited only heavy moving and lifting. AR 197, 394, 400-01, 408. Regarding depression, substantial evidence supports the ALJ's determination that Rodriguez's depression was not a severe impairment. On November 29, 2009, Dr. Rodriguez, a psychiatric consultative examiner, found that she had no severe mental impairments. AR 27, 205-06. She could perform activities of daily living normally, was oriented in all spheres, and had normal thought processes, thought content, speech, memory and concentration. AR 26,

203-04. He diagnosed major depressive disorder, in partial remission. AR 26, 205. Rodriguez could understand, remember and carry out simple one or two-step job instructions, could do detailed and complex instructions, and was slightly limited in her ability to relate and interact with supervisors, coworkers and the public, maintain concentration and attention, persistence and pace, associate with day-to-day work activity, adapt to the stresses common to a normal work environment, maintain regular attendance and perform work activities on a consistent basis, and perform work activities without special or additional supervision.[4] AR 26, 206.

The ALJ noted that the most recent treatment records from 2010 showed no problems or complaints about Rodriguez's back or depression. AR 25-26, 228-32. The ALJ did not err.

### E. Credibility

Rodriguez contends the ALJ did not properly consider her subjective symptoms.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Rodriguez' medically determinable impairments could reasonably be expected to produce the alleged symptoms. AR 25.

"Second, if the claimant meets this first test, and there is no evidence of

---

[4] Dr. Rodriguez assessed a GAF score of 60. The ALJ found the GAF score of "limited evidentiary value" and inconsistent with Dr. Rodriguez' unremarkable findings from Rodriguez's mental status examination. AR 27-28.

11

malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). Here, the ALJ found no evidence of malingering. He found that Rodriguez' statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with his finding that she has no severe impairment or combination of impairments. AR 25.

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing SSR 88-13) (quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

The ALJ found Rodriguez' statements regarding her subjective symptoms "not credible" to the extent that they were inconsistent with his findings. AR 25. He discounted Rodriguez' credibility for at least three reasons: (1) inconsistencies between Rodriguez' subjective allegations and her activities of daily living; (2) lack of treatment records for back pain or depression; and (3) lack of objective medical evidence supporting the degree of limitations. AR 24-25.

An ALJ may properly rely on inconsistencies between a claimant's

12

allegations and his activities of daily living. *Thomas*, 278 F.3d at 958-59; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ may consider claimant's daily activities as one factor in assessing credibility.). As the ALJ noted, Rodriguez alleged she was unable to work because of right knee pain, back pain, and chronic depression. AR 24, 44, 48. She stated that her impairments affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, memorize, complete tasks, concentrate, understand, follow directions, and use her hands. AR 24, 158. She contended that she had difficulty performing personal care tasks, following television programs, following instructions, and handling stress and changes in routine. AR 25, 155-59. When her pain level is "4-8," she cannot "do anything [sic] stay in bed." AR 155. The ALJ found it "contradictory" that Rodriguez made her bed, cleaned her house, washed dishes, watched television, read, prepared simple meals, drove a car, shopped for clothes and groceries, and attended church. AR 25, 155-57.

The ALJ considered the absence of treatment records for Rodriguez' back pain and depression. AR 25, 44-45. An ALJ may find a claimant's complaint about disabling pain unjustified or exaggerated if the claimant fails to seek treatment. *Orn*, 495 F.3d at 638; *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (lack of consistent treatment may be considered in assessing credibility). Regarding Rodriguez' back pain, the medical records submitted after the close of the record support Rodriguez' testimony that she had an MRI of her lumbar spine on August 16, 1999 that showed left sided disk herniations at L4-5 and L5-S1. AR 44, 344. The record also contains brief references to "LBP" or pain in the lumbar spine in 1999 treatment records.[5] AR 342, 393. However, as the Commissioner argues, the record lacks evidence that Rodriguez sought or

---

[5] "LBP" can be used as an abbreviation for low back pain. *See* National Center for Biotechnology Information, http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2867967/ (last visited Nov. 7, 2012).

13

received treatment for her back pain between January 2001 and the alleged onset date of April 1, 2007.[6] AR 25, 394; *see supra* note 3. On January 23, 2001, Dr. Hall found that Rodriguez would benefit from lumbar diskectomy at L4-L5 and L5-S1 from the left or intradiskal electrotherapy at both levels, and recommended continuation of NSAID's like Advil and home exercise.[7] AR 401. The record contains no further treatment records until 2010, when Rodriguez was treated for a cold and gynecological problems, with no mention of back pain or depression.[8] AR 228-29, 231-34. The record contains no treatment records for depression. Rodriguez told Dr. Rodriguez in 2009 that she used antidepressants, Zoloft and Klonopin in very low doses, prescribed by a general physician. AR 202.

    The ALJ considered the lack of objective medical evidence to support the degree of Rodriguez's claimed limitations. AR 25-28. Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis. *Burch*, 400 F.3d at 681. Rodriguez argues that the medical records contain objective evidence to support her complaints, citing the treating physician's opinion, evidence of right knee surgery in 1999, and her MRI from 1999. JS 15; AR 329, 401. As discussed above, the ALJ properly discounted the treating physician's opinion. In addition, as discussed above, the objective evidence did not support the degree of Rodriguez's claimed limitations. AR 25-28.

---

[6] According to Rodriguez' worker's compensation attorney and Rodriguez' report to Dr. Hall, Rodriguez was treated with approximately three epidural steroid injections between August 1999 and June 2000. AR 254, 397, 399.

[7] Rodriguez testified that "there wasn't money for [back surgery]" because "the case wasn't won." AR 44-45. Failure to seek medical treatment cannot support an adverse credibility finding when it is due to lack of funds or medical coverage. *Orn*, 495 F.3d at 638. However, there is no evidence in the record that a lack of funds prevented Rodriguez from otherwise seeing a doctor and treating her back pain and depression.

[8] Rodriguez testified that she was going to get new x-rays of her back after the hearing, but the record contains no such x-rays of her back. AR 49.

14

1     The ALJ's credibility finding is supported by substantial evidence. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

## IV.
## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: November 30, 2012

                                    ALICIA G. ROSENBERG
                                  United States Magistrate Judge